Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 459, INTERNATIONAL UNION OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

No. 72 Civ. 493.

United States District Court, S. D. New York.

Feb. 29, 1972.

Thomas T. Trunkes, N. L. R. B., New York City, for petitioner; Peter G. Nash, Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, Sidney Danielson, Regional Atty., N. L. R. B., New York City, of counsel.

Vladeck, Elias, Vladeck & Lewis by Everett E. Lewis, New York City, for respondent.

## OPINION

BAUMAN, District Judge.

Petitioner in this case, the Regional Director of the Second Region of the National Labor Relations Board (hereinafter called "the Board") seeks an injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended,[1] (hereinafter called "the Act") to enjoin certain activities of respondent Local 459, International Union of Electrical Workers, AFL–CIO (hereinafter called "the Union") which petitioner alleges are unfair labor practices in violation of the prohibition against "second-

---

1. 61 Stat. 149 (1947), as amended, 73 Stat. 544 (1959), 29 U.S.C. Section 160 (*l*) (1970). The pertinent parts of that Section provide:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) . . . (B) . . . of section [8(b)], . . . the preliminary investigation of such charge shall be made forthwith . . . . If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court . . . within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . . ."

ary boycotts" found in Section 8(b) (4) (i) (ii) (B) of the Act.[2] The function of this Court on a petition for an injunction pursuant to Section 10(l) is to determine whether it reasonably believes an unfair labor practice has been committed and if so, to order such relief as it deems just and proper pending resolution of the unfair labor practice charged by the National Labor Relations Board.[3] For reasons hereinafter set forth, an injunction will be granted.

The legal issue is whether picketing of a "common situs" or shared job location by striking employees of a primary employer (i. e., the employer with whom they have a labor dispute) is a prohibited secondary boycott when the picketing extends to a gate reserved for and used only by the neutral employer for pick-up and delivery of its supplies and goods. If the answer to that question is affirmative, the Court must then determine (1) whether only neutral employers and their employees used the reserved gates and if so, (2) whether they used the gates in connection with the normal business operations of the primary employer. The facts need only be established by proof sufficient to enable the Court to form a "reasonable belief" of their existence.

## I.

The Court makes the following findings of fact: Honeywell Information Systems, Inc. (hereinafter called "Honeywell") is a Delaware corporation engaged in the business of manufacturing and selling computer products and services. Its principal place of business is located at Waltham, Massachusetts and it operates plants and facilities in various States of the United States and in Canada. In the past year, Honeywell sold and delivered computers, computer equipment and related products in excess of $50,000 in interstate commerce.

Respondent Union is an unincorporated association in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work. Respondent retains offices at 160 Fifth Avenue, New York, N. Y. and transacts business within this judicial District. Respondent represents certain Honeywell employees who service and maintain Honeywell computers leased or sold to Metropolitan for use at its offices in North White Plains, N. Y. and who are involved in a labor dispute with Honeywell in this case.

Metropolitan Life Insurance Company (hereinafter called "Metropolitan") a New York corporation, with offices and principal place of business located at One Madison Avenue, New York, N. Y. and with offices located in various States of the United States, is engaged in the business of selling life insurance,

2. 61 Stat. 141 (1947), as amended, 73 Stat. 542 (1959), 29 U.S.C. Section 158(b) (4) (i) (ii) (B) (1970), which provides:
 "8(b) It shall be an unfair labor practice for a labor organization or its agents—
 (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case thereof is—

 (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or a manufacturer, or to cease doing business with any other person . . . . Provided, That nothing contained in clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

3. See McLeod for and on Behalf of N. L. R. B. v. Local 282, International Bro. of Teamsters, 345 F.2d 142, 145 (2d Cir. 1965); Vincent for and on Behalf of N. L. R. B. v. Local 25, National Asso. of Broadcast Employees, 321 F.Supp. 1250 (W.D.N.Y.1971).

accident and health policies and annuities. During the past year Metropolitan derived a gross revenue in excess of $1,000,000, of which more than $50,000 came from policyholders residing outside the State of New York. During the same period, Metropolitan paid in excess of $1,000,000 in claims to policyholders and beneficiaries residing outside the State of New York.

Jackson Trucking (hereinafter called "Jackson"), with offices and principal place of business located in Hackensack, New Jersey, is engaged in the trucking business. It transports merchandise for its customers to various business enterprises, including Metropolitan, in New York City.

Peter F. Mallon, Inc. (hereinafter called "Mallon"), a New York corporation, with offices and principal place of business located in Long Island City, N. Y., is engaged in the business of printing and lithography. During the past year, it sold products valued in excess of $50,000 directly to firms located outside the State of New York and, during the same period, it sold products valued in excess of $50,000 to firms in New York which are engaged in interstate commerce, including Metropolitan.

During that year, Honeywell leased or sold to Metropolitan computers and other related equipment valued in excess of $10,000,000. Many of these computers have been delivered to and installed in Metropolitan's principal office at One Madison Avenue, New York, N. Y. In this connection there exists a maintenance contract which requires Honeywell to maintain and repair that equipment. Honeywell keeps at that address thirty to forty field engineering representatives (maintenance people) who work three shifts, six days a week. The employees of Metropolitan do not maintain or repair the Honeywell computers and Honeywell's employees do not perform any function at Metropolitan other than maintaining and repairing Honeywell computers and products.

On or about January 14, 1972 the Union, as representative of the field service engineers employed by Honeywell at Metropolitan's offices in North White Plains, N. Y., and in furtherance of a labor dispute between those employees and Honeywell, engaged in picketing Metropolitan's premises at One Madison Avenue, including two receiving platforms located at East 24th Street and East 25th Street between Madison Avenue and Park Avenue South, respectively. Some five days later, Metropolitan affixed two signs at each of the receiving platforms which stated: "For Deliveries to Metropolitan Life Insurance Company Only." It advised Honeywell by telegram of its action in posting the signs and further advised Honeywell that they would not be available to receive any shipments to Honeywell. Metropolitan's Vice President in charge of company services instructed the appropriate supervisory employees to refuse all deliveries other than those to Metropolitan.

Metropolitan then advised the Union by telegram of its action in posting the signs and of informing Honeywell that it would no longer accept Honeywell shipments at the loading platforms. That day Honeywell informed its suppliers who normally made deliveries to Honeywell at One Madison Avenue to stop them and to make such deliveries to another depot in New York City.

Since then no deliveries or materials destined for Honeywell have been made via the two above mentioned loading platforms. Nonetheless, the Union has picketed the two receiving platforms with signs reading: "Honeywell Computer Technicians—On Strike—Met Life Is Used By Scabs As A Depot—Local 459, IUE–AFL–CIO." As well, the Union pickets at the loading platforms have successfully appealed to employees of Mallon and Jackson to stop deliveries to Metropolitan. At least seventy-nine such shipments have not been delivered because the deliverymen have refused to cross the Union's picket lines at the loading platforms.

No neutral employees whose duties are related to the normal business operations of Honeywell at the Metropolitan

Offices at One Madison Avenue have entered the premises through either of the two loading gates and there is no serious evidence that shipments of materials or supplies have been made by Honeywell from them.

## II.

Section 8(b) (4) (i) (ii) (B) of the Act provides that secondary boycotts by labor organizations are unfair labor practices.[4] Judge Learned Hand, in International Bro. of Electrical Workers Local 501 v. National Labor Relations Board, 181 F.2d 34, 37 (2d Cir. 1950), best described the essential evil:

"The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employee's demands."

In order to distinguish between primary and secondary activity the Board and the courts have adopted criteria to determine whether the objective of the activity is a prohibited secondary boycott. The performance of certain acts by a union is presumed to be prohibited secondary activity.

The Supreme Court, in Local 761, International Union of Electrical Radio and Machine Workers v. N. L. R. B. (General Electric), 366 U.S. 667, 81 S. Ct. 1285, 6 L.Ed.2d 592 (1961), first devised criteria to determine the lawfulness of picketing by employees of a primary employer at a reserved gate on a "common situs" (i. e., a "situation(s) where two employers (are) performing separate tasks on common premises." 366 U.S. at 676, 81 S.Ct. at 1291). In General Electric, there had been a strike by General Electric's employees at a General Electric plant. General Electric set up a separate "reserved" gate for use by neutral employees who worked at the site.

The Court held that a determination that picketing at the reserved gate was prohibited secondary activity rested upon a finding that only neutral employees used the gate and, further, that the neutral employees performed functions not related to the every day operations of the primary employer (e. g., construction or capital improvements).

In United Steelworkers of America AFL-CIO v. N. L. R. B. (Carrier Corporation), 376 U.S. 492, 84 S.Ct. 899, 11 L.Ed.2d 863 (1964) the Court reaffirmed the holding in General Electric and expanded its effect. The Court in Carrier, at 499, pointed out that the criteria for legality of picketing in a reserved gate situation on a common situs do not depend upon ownership of the premises where the picketing occurs. Therefore, the distinction in facts between General Electric, where the primary employer owned the premises at which the picketing occurred, and the facts here and in Carrier where the secondary employer owned or at least had legal control over the premises, is not relevant to the legality of the picketing at a reserved gate.

The key test remains the nature of the duties that the neutral employees who enter through the gate perform in relation to normal business operations of the primary employer, in this case, Honeywell.

The "normal business operations" of Honeywell at the common situs, One Madison Avenue, New York City, were the servicing and maintenance of computers which it had leased to Metropolitan. The offices of Metropolitan became a common situs because Honeywell service engineers reported to those premises daily to service the computers which had been leased or sold to Metropolitan. If Metropolitan had only leased the computers from Honeywell and obtained computer maintenance services from a neutral employer, there would be no common situs for the dispute. To hold otherwise would allow

4. See footnote 2.

pickets of a manufacturing plant, in circumstances like those in *General Electric*, to picket the final consumers of the manufacturer's products at the consumers' premises, an archtypal secondary boycott. Metropolitan is a final consumer of the Honeywell computers.

■ In applying the criteria for determining the legality of reserved gate picketing set forth in *General Electric* and *Carrier Corporation*, supra, this Court finds that only neutral employees, i. e., employees of Metropolitan or other third parties, used the reserved gates (i. e., the loading platforms) on East 24th Street and East 25th Street at the offices of Metropolitan. The Court further finds that the duties of those neutral employees were not related to the normal operations of the *primary* employer, i. e., Honeywell, at the common situs.

Furthermore, an additional aspect of the Union's actions tends to show that the object of picketing the reserved gates was indeed illegal. The signs carried by pickets since on or about January 20, 1972 do not clearly indicate that the primary dispute is between the Union and Honeywell. This factor, while not determinative, must be considered.[5]

However, the main standards remain those set forth in *General Electric*. This Court reasonably believes that the reserved gates were effectively reserved and the Union, therefore, had no right to picket them.

In light of the above facts and law, and as respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act, and Honeywell, Metropolitan, Mallon and Jackson are engaged in commerce within the meaning of Section 2(6) and (7) of the Act, this Court finds there is rea-

sonable cause to believe that an unfair labor practice has been and is being committed by respondent Union in violation of Section 8(b) (4) (i) (ii) (B) of the Act. Under the circumstances, it is just and proper that pending final disposition of the matters herein involved by the National Labor Relations Board, respondent, its officers, representatives, agents, servants, employees, attorneys and all persons acting in concert, are hereby enjoined and restrained from the commission, continuation or repetition of any picketing or patrolling of the Metropolitan loading platforms reserved by sign for the exclusive use of Metropolitan on East 24th Street and East 25th Street in New York City.

The above constitute my findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.

---

5. In Moore Dry Dock Company, 92 N.L. R.B. No. 93 (1950) the Board, in a situation involving "common situs" picketing (but not a "reserved gate") set out certain conditions which, if met, would determine that picketing of a secondary employer was "primary" and therefore protected:
"(a) The picketing is strictly limited to times when the situs of the dispute is

located on the secondary employer's premises;
(b) at the time of the picketing the primary employer is engaged in its normal business at the situs;
(c) the picketing is limited to places reasonably close to the situs;
(d) the picketing discloses clearly that the dispute is with the primary employer."